STEVEN CHARLES, Plaintiff-Appellant, v. RICHARD S. GORE, Defendant-Appellee.

First District (2nd Division)   No. 1—92—0797

Opinion filed June 8, 1993.

Francis E. Goodman, P.C., of Chicago (Francis E. Goodman and Margaret Goodman Smith, of counsel), for appellant.

Michael H. Wasserman, of Chicago, for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff, Steven Charles, appeals from a default judgment that revived a 1983 judgment against him in favor of defendant, Richard S. Gore. Charles presents as issues for review whether (1) the circuit court had jurisdiction over him, (2) the circuit court abused its discretion in consolidating two related actions, and (3) the default judgment reviving the 1983 judgment is void.

Gore and Charles, who was formerly known as Steven Typlin, were partners in the Gore and Typlin Partnership (Partnership). On December 16, 1976, they, as partners, signed a collateral note, payable on demand, in the amount of $50,000 to secure a loan that Gore, as creditor, made to the Partnership, as debtor. The note authorized the entry of confessed judgment against the Partnership. On the reverse side of the note, Charles (then Typlin) personally guaranteed one-half of the note amount, "waiving demand, non-payment and protest."

Gore and Charles have filed several lawsuits involving this note. In the first action (No. 78—L—16403), on August 16, 1978, Gore obtained a judgment by confession against Charles for $60,982.50 (the 1978 confessed judgment), including $10,982.50 in interest and fees. On September 7, 1978, Gore served Charles with a summons to confirm the 1978 confessed judgment. Without filing a special appearance to contest either personal or subject matter jurisdiction, Charles moved to open the judgment and for leave to file a verified answer and affirmative defense in order to defend against the judgment on its merits. In an order dated October 26, 1978, the circuit court denied this motion and, instead, confirmed the 1978 confessed judgment. No appeal was taken from this order, which had been made final and appealable.

Gore took several steps to execute upon his 1978 judgment, including a citation to disclose assets and garnishment actions, which netted him title to Charles' automobile (by court order) and $104 in cash. At the citation proceeding, Charles appeared and testified that he owned no other property; however, Gore learned that an assertedly fraudulent conveyance of real property was made by Charles to a trust of which his wife was beneficiary.

In the second action (No. 79—CH—3152), on May 18, 1979, Gore filed a complaint, later developing into a third amended complaint, for a creditor's bill and to set aside the fraudulent conveyance of

real estate by Charles to his wife. On two occasions, Charles filed motions in this case to dismiss Gore's complaints, based upon the allegations that the underlying judgment by confession was void. Both motions were denied. No appeals from these orders were taken by Charles. Instead, Charles filed an appearance and an answer in January 1982. No jury trial was sought. Charles thereafter discontinued his defense of the case. Charles failed to attend his deposition and did not comply with other discovery requests by Gore. On motion for failure to comply, respond, appear or defend, the circuit court entered an order of default against him. The prove up order noted that Gore testified and filed an affidavit. The circuit court specifically found that Charles defrauded Gore and entered the 1983 judgment against Charles for $111,908.36. On January 27, 1983, Charles' attorney was allowed to withdraw and Charles was granted time within which to secure new counsel.

On January 30, 1980, Gore filed a complaint (No. 80—L—2480), alleging, among other things, formation of the Partnership for trading and investing in securities; a loan of $20,000 for purchasing of membership in the Chicago Mercantile Exchange (Exchange), as well as other loans made by Gore to Charles to be used for investments; the $50,000 collateral note; additional advances of money; that Charles used these funds for his own benefit and personal use; and that Charles secretly sold the Exchange membership. Gore sought a finding of fraud and an award of $103,000 in compensatory damages and $309,000 in punitive damages. On March 3, 1980, Charles successfully moved to dismiss this action on the ground that Gore was barred from pursuing this action under *res judicata* principles, since judgment previously had been confessed against him. On appeal, the dismissal was reversed, the appellate court holding that the issue raised in the 1980 lawsuit, fraud, was different from the confession of judgment action and the identity of causes of action required for *res judicata* were not present. *Gore v. Typlin* (1982), 108 Ill. App. 3d 1205 (unpublished order under Supreme Court Rule 23).

Next, Gore filed a petition to revive the 1983 judgment on June 22, 1990 (the revival proceeding). The court quashed alias summons on July 10, 1991, and no service since has been made. On July 22, 1991, Charles filed a complaint seeking a declaration that the 1983 judgment is void (No. 91—CH—6672) (the declaratory judgment action). Gore moved to consolidate the declaratory action with the revival proceeding. Charles opposed this motion. The circuit court granted the motion and consolidated the cases.

Following the consolidation, Gore moved to default Charles in the revival proceeding. In opposition, Charles filed a response and presented oral argument. The circuit court entered a default judgment reviving the 1983 judgment on February 7, 1992, with appropriate Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) language inserted. From this order, Charles appeals.

Several separate actions, all filed in 1991 and subsequently consolidated, remain pending before the circuit court, including (1) the declaratory judgment action, (2) Gore's petition to revive the 1978 confessed judgment, and (3) Charles' declaratory judgment action requesting the 1978 confessed judgment be declared void.

## I

Charles initially contends that the circuit court lacked jurisdiction over him in the revival proceeding because Gore never served him.

■ Gore counters, first, that Charles consented to the court's jurisdiction by filing his declaratory judgment action, making service of process unnecessary in the revival proceeding. In support of this argument, Gore analogizes consolidating cases to joining counterclaims. True, Gore could have counterclaimed against Charles in the declaratory judgment action because Charles consented to the court's jurisdiction by filing that action. (See Ill. Rev. Stat. 1991, ch. 110, par. 2—614(a) (now 735 ILCS 5/2—614(a) (West 1992)); *Bonner v. Westbound Records, Inc.* (1979), 76 Ill. App. 3d 736, 741-42, 394 N.E.2d 1303.) Gore, however, chose to consolidate rather than counterclaim. A consolidation does not operate to establish jurisdiction where there was none before. (*Colletti v. Crudele* (1988), 169 Ill. App. 3d 1068, 1076, 523 N.E.2d 1222.) Consequently, Gore's argument that a consolidation should be treated as a counterclaim fails, and the consolidation here did not confer jurisdiction.

■ Next, Gore argues that service of process was unnecessary because Charles appeared generally in the revival proceeding by opposing the motion for default.

A judgment is valid where a court has acquired jurisdiction over the parties; absent a general appearance, personal jurisdiction can be acquired by service of process. (*State Bank v. Thill* (1986), 113 Ill. 2d 294, 308, 497 N.E.2d 1156.) A general appearance is any action taken in a lawsuit that is not strictly limited to an attack on *in personam* jurisdiction. (Ill. Rev. Stat. 1991, ch. 110, par. 2—301 (now 735 ILCS 5/2—301 (West 1992)).) A party appearing generally

waives all objections to any defects of jurisdiction, process, or service. *Lord v. Hubert* (1957), 12 Ill. 2d 83, 87, 145 N.E.2d 77.

Charles claims that he only responded to the motion for default as a party in the declaratory judgment action and that he reserved his rights in the revival proceeding. Section 2—301 of the Civil Practice Law allows a party to make a special appearance "as to an entire proceeding or as to any cause of action therein." (Ill. Rev. Stat. 1991, ch. 110, par. 2—301 (now 735 ILCS 5/2—301 (West 1992)).) A special and limited appearance, however, confines a party to contesting solely the question of *in personam* jurisdiction. (*Colletti*, 169 Ill. App. 3d at 1077.) Here, Gore moved for a default judgment after the consolidation. Gore served a copy of the petition to revive on Charles, but had never properly obtained *in personam* jurisdiction in the revival proceeding. Charles opposed this motion by filing a response and supporting memorandum, and by presenting oral argument. Both attorneys captioned their documents "[the declaratory judgment action] Consolidated into [the revival proceeding]." Charles inserted the phrase "without prejudice to his rights in [the declaratory judgment action]" in his response to the motion for default. On these facts, Charles clearly contested the motion for default on its merits and did not limit himself to the question of *in personam* jurisdiction. Charles may not limit his general appearance by inserting the aforementioned phrase and thereby convert it into a special appearance. Any action, such as this, which recognizes a case as being in court, will be deemed a general appearance unless the action was for the sole purpose of objecting to jurisdiction over the person. *In re Marriage of Villarosa* (1992), 237 Ill. App. 3d 983, 984-85, 605 N.E.2d 586 (and cases therein collected).

Therefore, Charles appeared generally and waived all objections to any defects of jurisdiction, process, or service.

The default judgment reviving the 1983 judgment is not void for lack of jurisdiction.

## II

■ Charles next alleges that the circuit court abused its discretion by consolidating the declaratory judgment action into the revival proceeding.

Section 2—1006 of the Civil Practice Law provides that "actions pending in the same court may be consolidated, as an aid to convenience, whenever it can be done without prejudice to a substantial right." (Ill. Rev. Stat. 1991, ch. 110, par. 2—1006 (now 735 ILCS 5/2—1006 (West 1992)).) Where two actions present virtually

identical issues, and a failure to consolidate the actions could result in inconsistent judgments, then consolidation is clearly proper. (*Djomlija v. Urban* (1982), 107 Ill. App. 3d 960, 968, 438 N.E.2d 558.) The circuit court has broad discretion in considering a motion to consolidate. *Horn v. Rincker* (1981), 84 Ill. 2d 139, 147, 417 N.E.2d 1329.

Here, both actions involved similar issues: Gore sought to revive the 1983 judgment; Charles is seeking a declaration that the 1983 judgment is void and, in effect, that there was no judgment to revive. Inconsistent judgments possibly could have been rendered. Moreover, the cases involved the same parties, and both were pending in the circuit court's chancery division. The circuit court properly determined that the consolidation was an aid to convenience.

Did the consolidation prejudice a substantial right? First, Charles claims that his right to service of process in the revival proceeding was prejudiced. As we previously noted, however, Charles waived all objections to any defects of service by appearing generally and opposing the motion for default.

Second, Charles contends that his right to a jury trial was prejudiced. A party who desires a jury trial must file a demand at the time the action is commenced or, for a defendant, when the answer is due. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1105(a) (now 735 ILCS 5/2—1105(a) (West 1992)); see *Djomlija*, 107 Ill. App. 3d at 968-69.) Here, although Charles filed a jury demand in the declaratory judgment action, he failed to request a jury in the revival proceeding after the cases were consolidated and before his answer was due. In fact, he never requested a jury trial in the revival proceeding although he opposed the motion for default. Therefore, the consolidation did not prejudice his right to a jury trial.

Finally, Charles argues that his right to a change of venue[1] was prejudiced. The circuit court must award a change of venue if requested by petition before the judge has ruled on any substantial issue in the case. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1001(c) (current version at 735 ILCS 5/2—1001(a)(2)(ii) (West 1992)); *Rosewood Corp. v. Transamerica Insurance Co.* (1974), 57 Ill. 2d 247, 250, 311 N.E.2d 673; *Stoller v. Paul Revere Life Insurance Co.* (1987), 163 Ill. App. 3d 438, 440-41, 517 N.E.2d 5.) If a request is made af-

---

[1]The applicable statute governing venue changes (Ill. Rev. Stat. 1991, ch. 110, par. 2—1001) has since been amended and resectioned under two titles, substitution of judge (735 ILCS 5/2—1001 (West 1992)) and change of venue (735 ILCS 5/2—1001.5 (West 1992)).

ter a ruling on a substantial issue, the petition may be filed but it becomes a discretionary matter. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1001(c) (current version at 735 ILCS 5/2—1001.5(c) (West 1992)).) In this case, Charles claims he was unable to request a change of venue because the court in the revival proceeding already had made substantial rulings. He points out that a revival proceeding is considered part of the original action; it appears that he refers to substantial rulings made from 1979 to 1983. Charles, however, never requested a change of venue in the revival proceeding. At the hearing on the motion to consolidate, Charles mentioned that he would request a change of venue if the cases were consolidated. The then-presiding judge told Charles to petition for a change of venue before Judge Albert Green after the consolidation, but Charles never did so. Having failed to request a change of venue, Charles' right to a venue change was not prejudiced.

In conclusion, we find that the circuit court properly granted the consolidation as an aid to convenience and did not prejudice any substantial right of Charles.

### III

Charles last contends that the default judgment reviving the 1983 judgment is void because the underlying judgments are void.

Charles first claims that the underlying 1983 judgment is void because it granted money damages that were not requested in the complaint. Count I of the complaint in No. 79—CH—3152 was a creditor's bill based upon the 1978 confessed judgment, which sought the exercise of equitable power to subject the real estate transferred by Charles to his wife for the fraudulent purpose of avoiding payment of any judgment rendered against him. See *People ex rel. Hartigan v. Anderson* (1992), 232 Ill. App. 3d 273, 597 N.E.2d 826.

Count II in No. 79—CH—3152 was an action to set aside a fraudulent conveyance of real estate by Charles in order to prevent satisfaction of the 1978 confessed judgment. More particularly, Gore sought the following relief in count II: (1) subject the real estate to an execution lien; (2) enjoin Charles and his wife from transferring any interest in the real estate; (3) set aside Charles' prior conveyance of the real estate to his wife; (4) appoint a receiver for the real estate and trust; (5) direct the sheriff to levy upon, advertise, and sell the real estate and apply the proceeds to satisfaction of the 1978 confessed judgment plus Gore's reasonable attorney fees, costs, and accrued interest on the 1978 judgment at the statutory

rate; (6) determine the respective rights of other parties to the real estate; and (7) "[g]rant such other and further relief which this Court may deem proper." No money damages *per se* were identified or sought.

■ It is improper in cases of default to award relief in excess of that prayed for unless notice is first given as provided by rule. (Ill. Rev. Stat. 1983, ch. 110, par. 2—604 (now 735 ILCS 5/2—604 (West 1992)).) Supreme Court Rule 105(a) provides that if new or additional relief is sought, then parties who have appeared but are in default are entitled to the same notice as parties not in default. (134 Ill. 2d R. 105(a).) A party has a right to assume that relief granted on default will not exceed or substantially differ from that requested in the complaint. (*Palatine Savings & Loan Association v. National Bank & Trust Co.* (1980), 80 Ill. App. 3d 437, 440, 399 N.E.2d 1015; *Dils v. City of Chicago* (1978), 62 Ill. App. 3d 474, 482, 378 N.E.2d 1130 (*Dils*).) In cases of default, a court that grants an award in excess of the *ad damnum* exceeds its authority and that portion of the decree in excess of the *ad damnum* is void. (*Rauscher v. Albert* (1986), 145 Ill. App. 3d 40, 46-47, 495 N.E.2d 149 (*Rauscher*); *Dils*, 62 Ill. App. 3d at 482.) Additionally, a judgment against a party upon a complaint that states no cognizable cause of action against that party is entirely void. (*Hoopingarner v. Peric* (1975), 28 Ill. App. 3d 53, 57, 328 N.E.2d 171.) A void judgment can be attacked at any time, directly or collaterally. *R. W. Sawant & Co. v. Allied Programs Corp.* (1986), 111 Ill. 2d 304, 309, 489 N.E.2d 1360.

Gore asserts that the subject matter of the lawsuit was Charles' fraudulent conduct in conveying real estate to avoid a debt owed Gore and therefore Charles should have anticipated money damages. Gore distinguishes *Dils* and *Rauscher* because they involved awards of money damages in excess of that requested, unlike this case, where Gore's complaint requested no specified amount, but asked for an award of accrued interest, costs, and attorney fees. Gore then correctly cites *Joseph A. Thorsen Co. v. Evans* (1980), 82 Ill. App. 3d 1119, 1124, 403 N.E.2d 666 (*Evans*), as holding that an award of monetary damages on default was appropriate because defendant had notice of the potential for such damages.

■ The case *sub judice* is closer on its facts to *Evans*. There, defendant had notice of the possibility of money damages because plaintiff's complaint requested an accounting and compensatory and punitive damages; therefore, the entry of $62,500 in compensatory damages and $50,000 in punitive damages was not void. (*Evans*, 82

Ill. App. 3d at 1123-24.) Here, although the instant complaint did not request any money damages, it did seek attorney fees, costs, and interest, as well as such further relief as the court deemed proper. By virtue of the elapsed time and the many actions undertaken by Gore to secure the relief ultimately granted, Charles had ample reason to anticipate substantial awards of interest and attorney fees. Charles was represented by counsel until after an answer was filed in the underlying case. He elected not to replace his withdrawn attorney. His inattention to pending litigation has led to this result. There was no error.

Next, Charles argues that the underlying 1978 confessed judgment is void because the court entering it never obtained *in personam* jurisdiction over him.

■ We must determine whether Charles properly may pursue this challenge. Initially, we note that there are five ways a defendant may challenge a judgment by confession: (1) defend a confirmation proceeding; (2) move to open the judgment under Supreme Court Rule 276 (134 Ill. 2d R. 276); (3) move to vacate the judgment under section 2—1301(e) of the Civil Practice Law (Ill. Rev. Stat. 1991, ch. 110, par. 2—1301(e) (now 735 ILCS 5/2—1301(e) (West 1992))) within 30 days after entry; (4) move to vacate the judgment under section 2—1401 (Ill. Rev. Stat. 1991, ch. 110, par. 2—1401 (now 735 ILCS 5/2—1401 (West 1992))) within two years after entry; and (5) seek a declaration that the judgment is void *ab initio*, as Charles presently is doing here. (See generally 4 R. Michael, Illinois Practice §42.6, at 375-80 (1989) (hereinafter Michael).) A void judgment can be attacked at any time, directly or collaterally. *R.W. Sawant & Co. v. Allied Programs Corp.* (1986), 111 Ill. 2d 304, 309, 489 N.E.2d 1360.

■ Because a plaintiff may move to confirm a judgment by confession and a defendant may move to open such a judgment, the interrelationship between these procedures occasionally raises difficulties. (Michael §42.6, at 379-80.) Here, Gore previously had initiated a confirmation proceeding and served Charles. Charles responded by moving to open the 1978 confessed judgment in order to defend it on its merits. The circuit judge denied the motion to open and stated that the 1978 confessed judgment was "confirmed." Under these circumstances, Charles elected to open the confessed judgment, instead of defending the confirmation proceeding, and that election is binding. (*Lyons Brothers Lumber & Fuel Co. v. Shepherd* (1980), 81 Ill. App. 3d 213, 216, 400 N.E.2d 975; *cf. Schultz v. Gignac* (1981), 94 Ill. App. 3d 399, 418 N.E.2d 991; *City-Wide Re-*

*alty Co. v. Fryer* (1979), 70 Ill. App. 3d 649, 388 N.E.2d 980.) Charles should have raised all known issues within the proceeding elected (*Burkett v. Finger Lake Development Corp.* (1975), 32 Ill. App. 3d 396, 402-03, 336 N.E.2d 628, citing *Brunswick v. Mandel* (1974), 59 Ill. 2d 502, 322 N.E.2d 25), including the issue of whether the 1978 confessed judgment was void for lack of jurisdiction. Having failed to raise the issue in his motion to open, Charles was thereafter barred from raising it in a subsequent proceeding.

For the reasons set forth above, we affirm the circuit court's judgment.

Affirmed.

McCORMICK, P.J., and DiVITO, J., concur.